310-0-115 and re the Marriage of Celeste Bessette-Figura, now known as Celeste Bessette-Johnson, Appleby, Mark Alice, versus Mark Figura, Appellant Howard Levine. Mr. Levine. Good afternoon, Justice. If you'll excuse me, I lost my voice, so I'm baffled. I have some laryngitis, but I'll be working through it. This is a post-decree action which involves an appeal from the trial court's ruling, which interpreted conflicting provisions of an approved judgment for dissolution of marriage, marital settlement agreement, and parenting order. Essentially, what had occurred was there was an agreed divorce in which there was both incorporated in a judgment a marital settlement agreement and a joint parenting agreement. In cutting to the chase, the marital settlement agreement incorporated a provision which indicated that, and I can cite it, that, consistent with the parties' existing agreement, all parochial school, daycare, and extracurricular activities and the like expenses, parents, as agreed by the parties or provided by order of court, incurred for the benefit of the parties' children will be paid 50% by the wife and 50% by the husband. The joint parenting agreement and the judgment had the exact same language, except the parens were removed. In other words, there was not a statement that, as agreed upon by the parties or provided by order of court, weren't either the joint parenting agreement or the judgment. I argued the case in the trial court, and I indicated that, despite the fact that only one of the documents had that particular language, the fact that the marital settlement agreement was incorporated into the judgment made the marital settlement agreement a part and portion of the judgment and that these particular provisions were not inconsistent with each other. In other words, the court need not have found that there was any ambiguity which would have provided for a hearing and allowing extrinsic evidence to determine the meaning of the judgment. In other words, it was plainly meant, and those particular wording were put in in a manner consistent with the fact that if read together, there was no inconsistency. And the fact that the marital settlement agreement was incorporated into the judgment made it part and parcel of the judgment the same as the judgment language. Now, this was the argument that I made initially to Judge Barrett. Then he found that there was an ambiguity, which I didn't agree, but even assuming that there was an ambiguity, his reliance on certain other extrinsic evidence, I believe, was A, abusive of his discretion, but more importantly, there was not a linkup of the language together with the extrinsic evidence which was introduced. One of the pieces of extrinsic evidence was a letter from my client's former lawyer. I didn't represent him at the time, to the lawyer for Mrs. Figueroa, indicating that he was in an agreement with the 50-50 split of these particular expenses, so long as he would agree to these expenses in advance. Judge Barrett indicated that had there been some type of a letter back to former counsel for Mr. Figueroa, that this would have been a piece of evidence he would have considered. However, we argue, and we argue in our brief, that the fact that that particular provision was, in fact, incorporated into the final marital settlement agreement shows that they, in fact, agreed with the change and made it. And both the marital settlement agreement, the joint parenting agreement, and the judgment were drafted by Mrs. Figueroa's attorneys and not by Mr.'s. And although there are some cases which say that even though this case occurred, both parties were represented by counsel, I think it's clear that there is nothing inconsistent with the joint parenting agreement, marital settlement agreement, and judgment, and that taken as a whole and read together, it was clearly a case that everybody agreed that there would be a 50-50 split of these expenses, so long as both parties agreed. And I think not only is this a reasonable interpretation, but it's an interpretation that, if you think about it, would be a very fair interpretation for both parties because the cost of parochial education today is very expensive, and there should be some say-so by both of the parents before, in fact, they are charged with the cost or expense. But that condition wasn't included in the marital settlement agreement or in the joint parenting agreement. It was included. It was included in the marital settlement agreement. The marital settlement agreement provided, and I'll quote it again, that consistent with the parties' existing agreement, and it's in the marital settlement agreement. It's in it. All parochial daycare and extracurricular activities and the like expenses perens, as agreed upon by the parties or provided by order of court, incurred for the benefit of the parties, minor children shall be paid 50-50, 50% by the wife, 50% by the husband. It was in the marital settlement agreement. It wasn't in the joint parenting agreement. But the marital settlement agreement was incorporated into the judgment and, by reference, became the judgment. So, therefore, that language is in, and it's not inconsistent. So it's our position that read together, there is, in fact, and I believe there's a rule of construction that says you don't put something into an agreement that you don't want to be made part of it and don't want to make it enforceable. So I think if you read these documents together, everybody agrees that there is a 50-50 split of these expenses, and the marital settlement agreement states specifically as agreed. Therefore, if there's no inconsistency, probably extrinsic evidence shouldn't have been taken at all. But even if it was, if you look at the extrinsic evidence and you apply it to the facts in this particular case, it's clear that the parties agreed that these expenses should be paid, assuming they agreed to them. I would suggest to the court that in my brief, the trial court relied a great deal on the prove-up testimony. Now, as all justices are aware, this prove-up occurred. My client was not present. Mrs., the former Mrs. Figueroa, was present. She was asked if she agreed that 50% of these expenses would be paid by each party. She said she did. No one asked her if there had to be an agreement, but the agreement was already in the marital settlement agreement and therefore is binding. I don't think that, and I respectfully disagreed with Judge Barrow at the time that we went through this hearing, and I would point out to this court that I think that it's clear what the intention of both parties was and that Judge Barrow was wrong in his interpretation when he said that he felt that because it only was in the marital settlement agreement, not in the joint parenting agreement, and not in the judgment, that it wasn't controlling. Particularly with the language which incorporated, by reference, the marital settlement agreement into the judgment and made it all one document. So I would ask the court in reviewing this particular case that it look carefully at the three documents together. They can be easily tuned together. They are not inconsistent in any manner. One merely modifies the other. And the rules of contract construction are clear, so that I would ask the court to reverse Judge Barrow's ruling and to effectively give credence to the document which provided specifically, which was signed by both parties and incorporated in the judgment, that these particular expenses could only be split on a 50-50 basis if, in fact, both parties agreed that these expenses should be split. Thank you. Question. What expenses are we fighting over? Oh, we're fighting over a contribution to parochial high school, which is very expensive, a contribution to extracurricular activities, which in this case included dance. Very expensive. So that these are not just small, unimportant items, but things that are really thousands and thousands of dollars. Is our standard of review de novo? It is de novo, yes. Tell me why, in reading this clause, we can't find that parochial school was to be 50-50, daycare was to be 50-50, extracurricular was to be 50-50, and like expenses is what had to be agreed on by the parties or court order. Well, let me try. Okay, thank you. The statement in the Marable Settlement Agreement says that consistent with the parties' existing agreement, all parochial school, daycare, and extracurricular activities and conjunctively and the like expenses. All right, so you focus on the word and. Yes. All right. As agreed upon by the parties. Then what's the reason for having or provided by court order? Don't we have a court order now? Well, the court order that we're talking about is the order which provides that the parties are to divide these expenses 50-50 if they're agreed to. The issue would be not if there's a court order, but the fact of it is there would have to be a hearing to determine if, in fact, in this case, my client would have agreed. That's why the as agreed upon provision was put in and why it's often put into these. Explain why the word or is there. As agreed by the parties or provided by court order. And here we have a court order that says dance and high school expenses 50-50. I guess I'm kind of missing the whole. Well, Justice Wright, I don't think you're missing it. I think what you're saying is that a court could order these, but in this particular instance, the standard would have to be that the court would have to determine if, in fact, at the time that this particular expense was incurred, that my client would have agreed to them to begin with. Otherwise, there would have been no reason to put that in. I mean, in fact, in many of these cases today, with parochial high school costing almost as much as college, there has to be some control so that both parties agree before children or these expenses, which can be literally $10,000 a child, would be split. That would be my response. Okay, and the way I read that is that at a hearing resulting in a court order, the court would be required to determine if those extracurricular activities were in the child's best interest. Well, or agreed upon. I mean, the fact that I don't believe it would be in their best interest. It wouldn't be a best interest test. It would be a test to determine if, at the time that that expense was incurred, the person that was asking that the other side agree to pay it had already agreed to it. All right, I understand what you're saying. Okay. Would that account for the fact or for a situation where the party didn't agree to it and then the other party, the opposing party, went in and said, this should be ordered? Well, let me say this. Then you have to go back to your cases which say that unless parties agree to parochial expenses, the court can't order because that's private school and, in this case, it's a Catholic private school, which would not be something that the court would order unless the parties had already stipulated or agreed that they, in fact, should order it. So I think there's a third district case. I wasn't prepared to give that to you today, but there is one that indicates that parochial school expenses will not be ordered unless the parties had already agreed in advance that that's where the children would be educated. Counsel, that's two minutes. All right, I've got nothing further. I don't think we have any questions. Thanks, Mr. Levine. And Mr. Ellis? Good afternoon, Justices. May it please the Court. My name is Mark Ellis. I present the appellee, Celeste Johnson. Your Honor, I'm just going to try to kind of respond to Mr. Levine's arguments, and I'm not going to go any further. I think Mr. Levine in your questions kind of point out why these provisions between the judgment and the JPA and the separate marital settlement agreement actually do conflict. They cannot be read together. You cannot reconcile those two provisions. One essentially gives Mr. Figueroa the veto power. If he doesn't agree, he doesn't have to pay. The other one provides that he has to pay no matter what. You can't reconcile these two together. And I would further point out that the language or provided by order of court means that Ms. Johnson couldn't file a petition, ask the court for him to contribute to parochial school expenses or extracurriculars, and that was contemplated then in the marital settlement agreement, which also conflicts with the judgment and the joint parenting agreement saying that he has to pay no matter what. So you can't. Was there a second count here asking for that relief? The actual petition filed in the trial court was for a petition for contribution. So that is what was being sought. So what happened to that angle? We looked at it, and it turns out that he should have to contribute. It shouldn't have to be by agreement. Mr. Levine argued that he didn't agree to it, so he didn't have to pay, and it got the ball rolling where we got to the point where there was a conflict. Do we consider extrinsic evidence? Is it ambiguous, which Judge Barron said it's not ambiguous. The fact is you can't read those two provisions together. He stated on the record they directly conflict with each other. It's not that they're ambiguous. The trial court, Judge Barron said that they conflict. He didn't find that the separate clauses were ambiguous. One is clear. He's to pay 50-50. The other one is clear. He's to pay 50-50 as agreed upon or further order of court. The problem is you can't read the two together. There's a conflict there, so he looked at extrinsic evidence, and he found that the best extrinsic evidence is to prove up. The letter that Mr. Levine – I guess my question was, was he – was there an attempt to get the trial judge just to say he – it was 50-50 if he agrees. Let's assume that for purposes of argument if he agrees. If he doesn't agree, then we go to court and ask for that contribution that you mentioned before and let the trial court determine if it's appropriate for him to make a contribution, and if so, what that contribution would be. Was that not followed through, or was that not part of the original petition? I believe what happened, Your Honor, is he was refusing to pay for it. So the petition was then brought before the court saying he owes this money, Your Honor. Just on the one issue that you're offering before us today. Okay. Your Honor, so there is a direct conflict. When you have a direct conflict and ambiguity, you go to extrinsic evidence. The letter that Mr. Levine presented to the court was in terms – during the negotiation process. The trial court was correct in finding that, okay, that's during the negotiation process. I don't know what happened between the submission of that letter to counsel and the day of the prove-up. So I'm going to look at the actual prove-up, what testimony was given. At the prove-up was my client, her attorney, as well as Mr. Figueroa's attorney. There are certain questions that were asked of Ms. Johnson. She stated on the record what her understanding of the agreement was. Mr. Figueroa's attorney had an opportunity to cross-examine her. He did on a couple of questions. I think it's clear by the record there was an issue with regard to the marital residence and how that's to be divided, and that was set forth one and two in detail during the prove-up. But the fact is that Mr. Figueroa's attorney, which was not Mr. Levine at that time, did not ask any questions regarding the 50-50 split. It was asked to Ms. Johnson, and you're going to split parochial school extracurricular activity fees 50-50? Yes, period. He did not follow up. He had an opportunity to cross-examine her. So he's indicating that that's the agreement. Aren't you asking – wouldn't you be asking that attorney to, like, prove a negative? Usually what would happen – I'm sorry. I mean, I had trouble with that, with the trial court's reasoning there, because it's like you're basing something on something that didn't happen. In a family court context, Your Honor, I think that they are wholly separate terms. It's either if someone is doing order to contribute 50-50 by agreement, it's completely different than having no control over what the kids are enrolled in in terms of school extracurriculars. At that point, alarm bells would have been going off if that's not the agreement, saying, no, no, no, wait a second. It's not 50-50 unless my client agrees to it. He would have asked her, isn't it true that it's only agreed upon expenses, agreed upon parochial school? He would not have let that go by the wayside without clearing up the record. And that's the reason they cannot be read together. I think a further point – and I actually brought up this argument before Judge Barron, and he did not agree with me – was whether the portion in parentheses, the as-agreed-upon or further order of court, actually modifies the like expenses. He did not agree with me. And it's not included on appeal, the issue. I think part of the reason is because she ruled in our favor, to be frank, Your Honor. But that was something I brought up early on because, as Mr. Levine has argued, or is trying to convince the court, that it's a specific provision that is there for modifying or further clarifying a general provision in two other instruments. And he's saying that the judgment, the MSA, as well as the joint parenting order, are three separate instruments that you have to read together as one agreement. And I agree with him. That is what the case law states. So if you're going to look at it and say, well, that is a specific provision, therefore it clarifies or modifies more general ones, then you have to look at whether or not it can be determined what that provision actually clarifies. And Mr. Levine read it to the court. But I'd like to point out that the parens begin, it is, and the like expenses, parens, as agreed upon by the parties, or provided by order of court, and parens, incurred for the benefit of the party's minor children. If there's any way that they could be reconciled, it may be in that it's actually modifying like expenses, which is the most general term in that provision. And it could be read together under those circumstances. But in terms of the MSA and the judgment being read together or being reconciled where parochial school, daycare, and extracurricular are modified by the as agreed upon language, they directly conflict. And I don't believe they can be read together. They should be read together. They can now be reconciled under what Mr. Levine has argued or in the manner that he has argued they should be. So I'd ask that you affirm Judge Barron's decision. Based on your analysis that you presented to the trial court, which is kind of consistent with the way I read that clause, it makes me feel good that you saw it the same way. Would we be affirming the assessment of the parochial school expenses 50-50 but then remanding for a hearing to determine whether the dance was in the child's best interest? My reading of this at that point was if there was an argument between the parties as to what like expenses meant, it would either be as agreed upon or it would be brought and the court would determine whether Mr. Figueroa had to pay 50-50 of that or not. But extracurricular activity is not included. It's separate out. It's all parochial school, daycare, and extracurricular activity, and the like expenses done to parents. Is the dance part of the school? It was an extracurricular activity separate from the school. All right. Thank you. I guess it was extrinsic evidence that Mr. Levine was talking about before with his client's letter to his then-attorney talking about this issue and talking about the parochial school issue itself. So there's some reference there, although is it in the trial court record now as part of the extrinsic evidence? Yes. I believe that letter was introduced. He was clearly worried about this issue. It wasn't like expenses that he was worried about. I think he just wanted as agreed upon to be included in there. I'm not going to represent to the court exactly where it was in that letter because I don't necessarily remember, but it is in the record. How does as agreed upon apply in the specific instance here where apparently Mr. Figueroa agreed that the child could go to parochial school but that he would only pay half if she had a B average? Do I have that right? That was his position at one point, but he was never conceding that he would actually agree to pay 50-50 of it or one half of it. I think that was argued in the trial court, but he actually never agreed to do that. In the record there is evidence. I think it was done more by representation or perhaps what he had said after she had enrolled. He said, I will agree if she maintains a B average. So that was in the trial. I'm trying to remember because I remember that too. That may be in there. Where was that in the record? Where was that in the record? Or do you know? Maybe Mr. Levine knew. I don't think that was in the records. I think it may have been brought up in the record, but I can safely say that Mr. Figueroa never stated that he would agree to pay for it at least formally in front of the court or to my client. There were talks where he said, despite the way I read this or don't read the MSA and the judgment, if she does maintain a B average, I may be willing to pay my half or one half of it, but that's not conceding that he had an obligation to pay it by the marital settlement agreement. I think that's where that came out, Your Honor. Any other questions? Thank you, Your Honor. Thank you, Mr. Strauss and Ms. Levine. I have to ask you, I've always pronounced your name Levine. That's Levine. It is Levine. It is. I think it's agreed. Judge, just a couple of quick points. Number one, I don't think that these provisions conflict at all. If you read from a contract standpoint, the as agreed upon merely modifies the fact that they're splitting the expenses 50-50 as agreed upon. So I don't think there's really a conflict. It's just it happens to be in one document. The document that was pointed out in the letter, which you'll see in the record in which he's saying, I'll agree to any extracurricular or parochial expenses so long as I agree. That's in the letter. I argued back that Judge Barron said, well, do you have a letter back where they agreed to that? And I said no, but what I said is it obviously was agreed to because someone put it in judgment. So that was the offer acceptance of that particular provision. With reference to your question, we never got that far because we never conceded that this was on the parochial school issue. We never got to the dance, but on the parochial school issue, his position was children should go to public school. I don't agree. That's when we got the issue on whether, in fact, he had to agree before the court could order parochial education. So I would say that there was never an agreement presented to the court that he would pay under any circumstances for the purposes of this hearing. And I think that if you look at all of these particular things together and reading them together, they can be easily reconciled. Admittedly, the joint parenting agreement didn't have it. The marital settlement agreement had it. But if you read the way the contract ended up, they were all incorporated and made part of the judgment. So the judgment as a whole had this provision in it. And certainly it was given in bargain, foreign sign. And the fact that no one asked her at the prove-up, often in prove-ups, we don't go through every little term. Sometimes we just hit the highlights. So I would ask the court to consider that in making its decision. Thank you. I guess nothing more. Thank you. Thank you, Judge. Thank you, Mr. Lein. And thank you both for your argument today. We will take this matter under advisement.